Carr, J.
The only serious question in this case, is that which has been raised, and very well argued, on the subject of contribution. I have laboured exceedingly, to understand it; but l feel doubtful of my success; especially, as the present inclination of my mind seems opposed to my former opinion.
I premise, that I do not think this question at all affected by the exception or reservation in the deed from Sisson to Koontz for the benefit of TIarrison and Cravens, nor by the understanding, .which the appellant’s counsel supposed, existed between the parties to that deed. For the intent and design of the parties, we must consult the deed itself. That gives a lien on Sisson’s land, except 75 acres on the east side of the tract. As to the land thus excepted, Harrison and Cravens have no claim on it as a security for the debt due them : but that is all: they say nothing as to the effect of Brock’s lien upon it; much less do they stipulate to relinquish any right, which their position as incumbrancers may give them, to throw Brock’s lien on this excepted land. We must, then, decide this as a general question.
Considering Conrad’s claim to preference over Harrison, by throwing Brock’s lien off the 75 acres, wholly unfounded, has he a right to stand on equal ground with Harrison? to claim a rateable contribution of him, in the payment of Brock’s debt ? It lies at the very root of this doctrine of contribution, that the parties shall stand in cequali jure. The vendor or his heir can never call on his vendee for contribution. Suppose, after Sisson’s deed to Harrison *539 and Cravens, and before that to Conrad, Brock’s trustee had advertised, and sold the 75 acres retained by Sisson; he could never have called on Harrison to bear his part of a common burden. So far from it, if Brock’s trustee had advertised the whole land for sale, there can be no doubt, that Harrison and Cravens could have injoined the sale of the part covered by their deed, until it should be found, that the sale of Sisson’s 75 acres would not satisfy Brock’s lien; and for such deficiency only would the residue of the land have been liable. So, if Sisson had died, and this land (the 75 acres) had descended to his heirs, it would have been first liable in their hands, nor could they have asked contribution of any body; except indeed of each other, if they bad borne the burden unequally. Harrison and Cravens, then, having this 75 acres between them and Brock’s lien, when they took their deed, is there any act or omission of their’s since, which could deprive him of this protection ? None such is relied on. Could the sale or mortgage of this 75 acres by Sisson to Conrad, with full notice, change the equity of the parties, and give Conrad a right to contribution, which all must admit Sisson had not? This would violate that settled rule, that a vendee with notice, takes the land with all its equitable burdens, and stands precisely in the shoes of his vendor. Look at the position of these parties; do they stand in cequali jure1} I think not. Harrison and Cravens took their deed, knowing they had the 75 acres between them in danger: Conrad took the 75 acres, with the same knowledge: a knowledge calculated, essentially, to influence the contract of each. Suppose a man had bought a thousand acres of land, at the price of 10.000 dollars; that he had mortgaged it for the purchase money, and had paid all of it but 1000 dollars; and another wants to buy a hundred acres of this land : in making his contract, it will not weigh a feather in the scale, that the whole tract is still bound for 1000 dollars, while he knows that nine hundred acres still remain in his vendor’s hands liable for this balance, before the hundred acres he proposes *540 to buy; can be charged. He would, without hesitation, give the full price, and pay the money, satisfied that the lien could never touch him. But suppose the vendee of the thousand acres, had sold to different purchasers nine hundred acres, and offered the last hundred to another, with the original lien for 1000 dollars still on the tract? assuredly, his prospects in the purchase would be very different; and common prudence would induce him to pause, till he should see clearly how the incumbrance was to be met. It seems plain to me, therefore, that the successive purchasers, or incumbrancers, do not stand in cequali jure; and that no one who comes after, can call on those before him for contribution. Sir W. Harbert's case, 3 Co. 11. b. when carefully examined, will be found to rest on these principles of equity. The same subject is very ably handled by chancellor Kent, in several cases; especially in Clowes v. Dickenson.
If it be asked, how I can reconcile this decision with that of Beverley v. Brooke, in which I sat, and agreed fully with the rest of the court? I answer, that I cannot reconcile them to my own satisfaction. I can only say, that, in each, I have decided as I thought right. I well remember to have examined with care, the authorities cited in Beverley v. Brooke, by our excellent and learned brother [ Green, J.] whose aid I most sincerely wish we had now; and to have thought his deductions from them correct. In that case, the decisions of chancellor Kent now cited, so powerful in their reasoning, seemed to have escaped both the bar and the bench. There was no reference to them. The counsel, indeed, took the ground in argument; but we thought all the authorities were the other way.
I am for affirming the decree.
Cabell, J.
As to the first point, it is enough to say, that I concur with judge Carr, that the exception of the 75 acres out of the deed of trust of February 1822, to secure the debt due Harrison and Cravens, furnishes no ground to sustain Conrad's claim to priority of satisfaction out of that reserved parcel.
*541 The other question is, Whether, on general principles, Brock’s debt, which every body admits must be provided for, is to be first charged on the parcel of 75 acres? or whether it is to be charged, rateably, on that parcel and on the residue of the land conveyed in trust to Cravens and Harrison ? There is no difference, as to this question, between creditors secured by mortgage, and creditors secured by deed of trust; and as the case may be thereby simplified, I will consider it as if Sisson were mortgagor and Brock mortgagee of the whole tract, and Harrison and Cravens, and Conrad, were subsequent mortgagees, each, of particular parts of the tract.
All mortgages, whether original or subsequent, are regarded, in a court of equity, as mere equitable incumbrances for the security of the debt; and it is the business of that court, so to mould and direct these equities, as to effect the purposes of justice.
If there were no other persons concerned in this case, than Sisson the mortgagor, Brock the first mortgagee, and Harrison and Cravens the second mortgagees, all would admit, that a court of equity, in providing payment for Brock’s debt, ought so to direct it as not unnecessarily to lessen or impair the security of Harrison and Cravens; and, consequently, that Brock’s lien ought to be made to fall, in the first place, on the 75 acres not included in the mortgage to Harrison and Cravens, and in which Sisson and Brock were alone interested. If this would be so, in that case, I cannot conceive how the alienee of Sis-son’s equity of redemption, can stand on better ground than Sisson himself. And, accordingly, there never has been a case, where one of two subsequent mortgagees were held to be contributory to the other. They are not in equal right; but the last mortgage takes in subordination to him who precedes him.
It is supposed, that the case of Beverley v. Brooke is in conflict with these principles. But that case is different from this, in some important respects. That was not the *542 case of subsequent incumbrances, after a prior mortgage, but after a prior judgement. In that case, English had obtained a judgement against Pickett, who afterwards mortgaged a part of his lands to Beverley, and then, the whole to Scott. English, by his judgement, had a legal lien, and could have taken out an elegit against all the lands of Pickett; and it was not competent to a court of equity, to restrain or limit him in the exercise of that legal right. Besides, he was not plaintiff, nor did he ask any thing of a court of equity. He stood on his legal rights, which bound all of Pickett's lands; and this court, conforming to the law, executed that lien, by directing that all the lands should contribute, rateably towards the satisfaction of his judgement. Whether that decision was right or not, it will be time enough to inquire when a similar case shall occur. It is sufficient, for the present, to say, that that case is materially different from this; for here, the original lien is merely an equitable incumbrance, and not a lien by judgement; and here, the person claiming contribution, is plaintiff in equity, and therefore, can ask nothing but equity.
I concur in the opinion, that the decree should be affirmed.
Tuckek, P.
The rights of the parties in this case, must first be examined upon general principles of law, independent of the influence, which the exception in the deed of trust of February 1822, is supposed to have upon it. In this regard, Conrad's pretensions will be found to rest on no reasonable foundation. Brock having a deed of trust on the whole land, and Harrison and Cravens a subsequent deed of trust on one part of it, and Conrad a still later deed of trust on the whole, it is found, that there will not be enough to pay all. Brock must be paid, for he has the first lien. Harrison and Cravens, or Conrad, must lose. Which ought to be the loser, the prior or the subsequent incumbrancer? The latter, assuredly. Conrad does not think so: but he can sustain his claim, only by shewing that he has a right, either to throw the whole burden from his *543 shoulders upon Harrison and Cravens, or a part of that * 1 burden by compelling them to pay rateably.
That Conrad should throw the whole burden upon liarrison and Cravens, who obtained their lien before he obtained his, would indeed be without example. The principle is clear, that where a first incumbrancer (as Brock in this case) has two funds to resort to, and a subsequent incumbrancer but one, the latter may compel the former to seek satisfaction out of that on which he has no lien, provided he does not thereby interfere with the superiour rights of a third person. Thus, if Harrison and Cravens had no incumbrance, Conrad might demand that his 75 acres should be relieved, and the burden thrown on that portion which would yet have remained in the debtor’s hands. But Harrison and Cravens have an incumbrance on that part; an incumbrance prior to Conrad’s ; and it would reverse the order of things, and upturn the established principles of equity, if he, who is subsequent in point of time, should be prior in point of right. Conrad, therefore, has no pretension to throw the whole burden upon Harrison and Cravens.
Neither is he entitled to throw any part of the burden upon them. Before he purchased, no person had that right. His purchase was made with knowledge of their lien, and of Brock’s incumbrance, and with presumed knowledge of the legal effect of those liens. Would it be just or reasonable, that Harrison and Cravens, without any fault, or assent on their part, should thus be incumbered with any part of this burden? Far otherwise; for they not only have a right to resist Conrad’s pretensions to throw the burden on them, but if Brock himself had been about to do so, they would have been entitled to demand that the whole burden should have been thrown upon Conrad. This is a necessary consequence of the principle of equity, already stated, that whore a first incumbrancer has two funds to resort to, and the subsequent incumbrancer can only charge one of them, the first incumbrancer shall be compelled to seek re *544 dress, in the first instance from the other fund. Thus, if Sisson still held the 75 acres of land, Harrison and Cra-Wns would have a clear right to demand that Brock’s 400 dollars should be paid out of that parcel, if adequate to the purpose, so as to leave their fund untouched. It is no sufficient objection to this, that Harrison and Cravens would thus, in effect, have satisfaction out of a fund on which they had no lien. That objection has never been considered availing, since the case of Lanoy v. The duke of Athol, 2 Atk. 444. See Attorney General v. Tyndall, Amb. 614. Aldrich v. Cooper, 8 Ves. 381. The principle is firmly established, and cannot now be called in question, that if two funds of a debtor are liable to one creditor, and only one fund to another, the former shall be thrown upon that fund, to which the other cannot resort, in order that he may •avail himself of his only security.
Now, if upon the execution of the deed of trust to them, Harrison and Cravens had this right against Sisson, they must have the same right against Conrad, because when Conrad purchased, he took his 75 acres, subject to its liability in the hands of the debtor, in preference to the land already incumbered to Hamson and Cravens. He sits (as has been well said) in the seat of his grantor, and must take the land with all its equitable burdens. It cannot be in the power of the debtor, by the act of selling the remaining land to discharge it, and throw the burden back upon Harrison and Cravens. If so, we should then have this unheard of state of things, that one man shall lose his rights and property, without his fault or his assent, and another shall be enabled to take them away without an equivalent. The equity of Harrison and Cravens, therefore, as against Sisson, to throw the burden upon his 75 acres, still subsists as against Conrad, who purchased from him with a full knowledge of all the facts, and a presumed knowledge of all the legal consequences of those facts.
But it is said to be settled, that all the alienees of the lands of a debtor, are bound to contribute, rateably, to the *545 satisfaction of a judgement which binds them, without regard to the time or order of their purchases. And it is contended, that the case of a mortgage does not differ from that of a judgement, nor the case of incumbrancers from that of alienees.
That the principle contended for is in direct conflict with that which, I think, has been already shewn to be established, is sufficiently obvious. That it is in conflict with the reason of the thing, seems equally plain. “ If,” says chancellor Kent, “ there be several purchasers in succession, at different times, I apprehend, that, in that case also, there is no equality, and no contribution as between those purchasers. Thus, for instance, if there be a judgement against a person owning three acres of land, and he sells one acre to A. the two remaining acres are first chargeable in equity, with the payment of the judgement debt, whether the land be in the hands of the debtor or of his heirs. If he sells another acre Lo B. the remaining acre is then chargeable, in the first instance, with the debt as against B. as well as against A. and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency, in preference to the acre sold to A. because, when B. purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect, we may say of him, as is said of the heir, he sits in the seat of his grantor, and must take the land with all its equitable burdens. It cannot be in the power of the debtor, by the act of assigning or selling his remaining land, to throw the burden of the judgement, or a rateable part of it, back upon A.” Upon these principles, set forth in Clowes v. Dickenson, chancellor Kent proceeded in that case, and on the same principles, he had previously decided the case of Gill v. Lyon. I do not perceive how the reasoning, or the conclusion, of the judge can be successfully controverted. His decisions, indeed, are not binding authority upon this court; but wc are bound to follow the light of reason, from whatever luminary it may be poured upon us.
*546 Sustained by this high opinion, I should have no difficulty pronouncing, that a subsequent alienee or incurnbrancer of one of several mortgaged subjects, can never call upon a precedent incumbrancer of another, for contribution, but for the case of Beverley v. Brooke, in which the common law doctrines are cited, approved and enforced, in reference to incumbrancers, and that too in a court of equity. Without questioning the truth of the doctrine at law, I should have conceived the principles of chancellor Kent would have prevailed in equity. The distinction between the cases grows out of the difference of the tribunals, as happens in a thousand instances. It rests upon principles of equity unknown to the common law, and the creatures of courts of chancery; principles, which form a part of that artificial but beneficent system, which has so admirably contrived to soften the rigour of the common law, and to transfer the purest ethics through the whole of our jurisprudence.
While, however, the case of Beverley v. Brooke stands as the law of the court, we are not justified in taking a distinction from the difference of the tribunals of law and equity: that was a case in equity as well as this. But that was the case of a judgment; this, of a mortgage : and if I could see no distinction between them, I should not be disposed to extend to this case, as it is not identical, a principle with which my reason is not satisfied. There is, however, some distinction between the cases. The right of the purchasers, as we are told in the authorities cited, is not to compel each other to contribute, but to force the plaintiff in the judgement, by audita querela or scire facias, to issue his execution against all. If this is not done and one pays all, it would seem he is without remedy. 3 Co. 14. b. But, in the case of the mortgagee, there are no means of compelling him, at law, to turn all the parties out of the mortgaged premises. His title is at law absolute as to the whole. The incumbrancer who would enforce contribution, can only have it in equity: and if he asks it there, he must shew that he has equityi and this, I take it, the last incumbrancer cannot shew, as against the prior mortgagee.
*547 It remains, as to this part of the case, only to say that the exception or reservation of the 75 acres, contained in the deed of trust to Harrison and Cravens, can have no influenco in withdrawing the case from the influence of general principles. The argument was, indeed, strong and imposing, and if there could have been no other motive for the exception than the protection of the 75 acres from the operation of this equitable principle, it would present a question of much difficulty. But there was another ample and more obvious motive for this exception : the protection of these 75 acres from Harrison and Cravens’s lien for 3212 dollars. Brock’s lien was trivial; the debt due him was reduced to 400 dollars : it could prove no obstruction to a sale : whoever purchased could easily clear it off with part of the purchase money. Not so, if it bad been bound for the 3212 dollars. If offered for sale, it might well have been objected that that large debt would sweep the whole. If once bound, Harrison and Cravens might have been unwilling to release it, unless they got the whole proceeds of sale, which would have thwarted the views of Sisson, who wished the command of these funds. These, I conceive were the views of the parties. They are, at least, more likely to have been the operative motives, than a protection for a mere equitable right, of which, it is very probable, not one of the parties to the instrument had any knowledge or conception. We cannot consider the exception, therefore, as a waiver of that right, since it may be ascribed to a different and more obvious consideration.
Decree affirmed in omnibus.